UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-----------------------------------------------------------X

ALLIED CHEMICAL CARRIERS LLC,

                  Plaintiff,

    - against -

BRIT LLOYD'S SYNDICATE 2987 a/k/a
BRIT INSURANCE,

                  Defendant.
-----------------------------------------------------------X

Case Number:

**COMPLAINT**

      Plaintiff, by its attorneys, Freehill, Hogan & Mahar LLP; and Llorca & Hahn LLP complaining of the Defendant, alleges as follows:

      1.    At all relevant times, the plaintiff Allied Chemical Carriers LLC (hereinafter "ACC") was and still is a corporation duly organized and existing pursuant to the laws of the Republic of Liberia, with an office and principal place of business at 21 River Road, 2nd Floor, Wilton, Connecticut 06897.

      2.    Upon information and belief, at all relevant times, defendant Brit Lloyd's Syndicate 2987 a/k/a Brit Insurance (hereinafter "Brit") was and is an insurance company organized and existing under the laws of the United Kingdom, with an office and principal place of business at 55 Bishopsgate, London EC2N 3AS England.

      3.    This Court has jurisdiction over the subject matter of this action for breach of a maritime contract pursuant to 28 U.S.C. § 1333.

      4.    Further, the Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a). The matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

384706.1

5.      This Court has personal jurisdiction over the Defendant by virtue of the "Choice of Law and Jurisdiction" clause as set forth in the Policy of Insurance described below, and attached as Exhibit A, whereby Defendant agreed to submit to the jurisdiction of any court of competent jurisdiction within the "state of domicile of assured" and acknowledged and intended by such clause that the place of suit under the Policy is the State of Connecticut, where the Plaintiff assured has its principal and sole place of business. Further, upon information and belief Defendant transacts business within Connecticut and is amenable to jurisdiction in Connecticut thereby.

## FACTS LEADING TO THIS DISPUTE

6.      Prior to October of 2010, in conjunction with and as part of their charterers liability insurance program ("C/L"), Plaintiff ACC and its affiliate Fairfield Chemical Carriers Inc. ("FCC") had a separate section in their C/L policy for the value of the bunkers (fuel) they purchased for their ships. This coverage was actually basic cargo insurance which covered ACC and FCC for the total loss of the bunkers.

7.      During the course of 2010 and prior to the policy renewal in October of that year, there were several incidents wherein ACC and FCC purchased fuel for their time-chartered ships and the quality of the fuel was so poor that they had to make arrangements, in some cases, to offload it and replace it with good fuel. These types of losses were not covered under the type of charterers bunkers policy ACC and FCC had in place in 2010, which prompted them to start asking questions to their brokers, Coastal States Insurance ("Coastal"), concerning the possibility of providing them with "enhanced" bunkers coverage.

8.      During August and first-half September 2010, Plaintiff's broker, Coastal, had many telephone conversations with various people at ACC and FCC regarding the ongoing open

bunkers claims. During several of those conversations, the subject of possibly enhancing ACC's and FCC's bunkers coverage to include some of the issues that they were then dealing with came up.

9. In mid-September, Coastal asked independent brokers OAMPS to try to come up with a policy that would replace the bunkers coverage that ACC/FCC had at that time and would include broader coverage to include contamination claims and other types of claims.

10. In response to Coastal's request, OAMPS sent Coastal an email on 9/16/2010 with a quote for enhanced bunkers coverage attached.

11. On the same date (9/16/2010), Coastal sent the email to its clients ACC and FCC with a copy of the quote attached.

12. On 9/29/2010, Plaintiff sent an email to Coastal with an order to renew the ACC/FCC bunkers coverage with the enhanced coverage. Coastal then sent an email to OAMPS on the same date instructing them to include enhanced coverage in the new policy.

13. OAMPS subsequently confirmed that the new bunkers policy was bound for 12 months with effect 9th October 2010. OAMPS placed this new policy with Defendant.

14. On 10/18/2010, Coastal was called by Jim Monigan of Plaintiff's office asking if ACC and FCC either had or could obtain coverage for bunkers consumed or lost while a vessel is hijacked by pirates. Coastal sent an email to OAMPS on the same date asking OAMPS to look into this.

15. On 10/20/2010, Coastal had an email from OAMPS, copied to Mr. Colin Bird, the Brit underwriter, in which OAMPS stated it had just had a conversation with the Brit underwriter, Mr. Bird, and Mr. Bird's view was that the scenario mentioned (*i.e.,* bunkers "lost" due to consumption whilst the vessel was detained by pirates) was covered under the policy that

3

was already issued, subject to cover limits/deductible, etc. This OAMPS email was based upon a direct conversation between OAMPS' Mr. Craig Stansfield and Brit's underwriter Mr. Bird. This information was transmitted to Plaintiff by Coastal. Based upon this representation by its insurer, Plaintiff ceased investigating cover for bunkers lost due to consumption during a piracy event, secure that it was already so covered.

16. On 8/20/2011, the ship M/T FAIRCHEM BOGEY, on time-charter to ACC and covered by the policy here in question, was hijacked by pirates.

17. On 8/25/2011, Coastal informed underwriters, through OAMPS, that the ship had been hijacked, and that the insured intended to file a claim under the policy.

18. On 9/26/2011, Coastal received a quote from Brit (via OAMPS) to renew the policy (renewal date 10/8/2011) at rates that were about 22% higher than what ACC/FCC were paying before making the claim. Brit's renewal quote reflected the pending claim, and Brit never advised Coastal, OAMPS or Plaintiff that coverage would be denied. The policy was accordingly renewed at the higher rates.

19. After Plaintiff renewed the policy, it never heard anything else until it filed the complete supports for the claim in early February of 2012. Shortly thereafter, Brit informed Plaintiff, through brokers, that they were denying the claim.

FIRST CAUSE OF ACTION FOR PAYMENT UNDER THE TERMS OF THE POLICY

20. Plaintiff repeats each and every allegation contained in paragraphs 1 through 19 of this Complaint, as if fully set forth herein at length.

21. On or about October 9, 2010, in consideration of a premium paid, the insurance brokers Coastal States Insurance and OAMPS, on behalf of the Defendant, issued a marine

insurance policy ("Policy of Insurance") to the Plaintiff covering, among other things, losses relating to general average sacrifices pertaining to the vessels entered in the policy, among them the M/T FAIRCHEM BOGEY.

22. The hereinabove-described piracy event was a general average event pursuant to U.S. law and practice.

23. The loss and consumption of bunkers by the M/T FAIRCHEM BOGEY during the hereinabove described piracy event was experienced during a general average event, and constituted a general average sacrifice pursuant to U.S. law and practice, and was therefore a covered loss under the Policy of Insurance.

24. Said Policy and the Endorsements thereto, in consideration of the payment of premiums paid by Plaintiff, remained in force from October 9, 2010 up to and including the time of the losses and occurrences hereinabove set forth.

25. Despite proper demand for payment under the Policy of Insurance, Defendant has wrongfully refused to pay.

26. Plaintiff has at all relevant times acted prudently and has fulfilled all of its obligations and conditions precedent as required under the aforesaid Policy of Insurance.

27. Plaintiff has suffered an insured loss under one or more provisions of the Policy of Insurance in the aggregate sum of $269,053.73. The Defendant has breached its obligation under the Policy of Insurance by wrongfully denying coverage and/or delaying the payment of Plaintiff's claim relating to the loss of bunkers of the M/T FAIRCHEM BOGEY, as described hereinabove.

28. By reason of the Defendant's wrongful denial of coverage and/or delay of payment, Plaintiff has sustained damages of $269,053.73 plus interest and costs, insurance

384706.1

premiums and attorneys' fees, no part of which has been paid by the Defendant although duly demanded.

## SECOND CAUSE OF ACTION FOR ESTOPPEL

29. Plaintiff repeats each and every allegation contained in paragraphs 1 through 28 of this Complaint, as if fully set forth herein at length.

30. The Defendant's employee, underwriter and representative, Mr. Colin Bird, caused Plaintiff to enter into and/or retain this Policy of Insurance and/or cease investigating alternative cover by expressing his view that consumption or loss of bunkers during a piracy event was covered under the Policy of Insurance.

31. Such representation was reasonably relied upon by Plaintiff, and Plaintiff has thereby suffered damages, to its detriment.

32. As a result of the foregoing, Defendant is estopped from denying Plaintiff's claim for payment under the Policy of Insurance, and is liable for payment of Plaintiff's claim plus interest, costs, premiums, and attorneys' fees.

## THIRD CAUSE OF ACTION FOR WAIVER

33. Plaintiff repeats each and every allegation contained in paragraphs 1 through 32 of this Complaint, as if fully set forth herein at length.

34. After receiving the Plaintiff's claim, Defendant entered into negotiations for renewal of the Policy of Insurance, all without disclosing any intention to deny the claim, and charged a higher premium since Plaintiff had suffered a covered loss during the original policy term.

35. As a result of its acts or omissions, Defendant has waived any rights to deny coverage for the claim it had received prior to said renewal, and is liable to pay the claim, plus interest, costs, attorneys' fees, and premiums.

## FOURTH CAUSE OF ACTION FOR BAD FAITH

36. Plaintiff repeats each and every allegation contained in paragraphs 1 through 35 of this Complaint, as if fully set forth herein at length.

37. Defendant and or its agents and representatives have acted recklessly, maliciously, and in bad faith in the handling of Plaintiff's insurance claim. Defendant originally answered inquiries from Plaintiff, before any claim, concerning coverage under the Policy of Insurance, in such a way as to lead Plaintiff to the reasonable belief that a claim such as here made would be covered under the policy. Plaintiff therefore entered into and/or retained the policy here at issue and paid premiums. After the loss, and with knowledge of the claim, Defendant renewed the policy and charged higher premiums because of the pending claim, all without telling Plaintiff that the claim would not be paid, and would be declined.

38. Defendant's repeated delays in handling the claim, coupled with Defendant's repudiation of the views and actions of its then-underwriter Mr. Bird, were part of an intentional and bad-faith practice on the part of Defendant designed to coerce the Plaintiff into settling for an amount less than it was owed under the Policy of Insurance. Upon information and belief, such unfair claim settlement practices were part of an overall practice aimed at the public generally to enable Defendant to obtain an unfair investment income from invested premiums and/or an unfair settlement advantage over assureds of limited resources such as Plaintiff.

384706.1

39. Plaintiff has provided its full cooperation to the Defendant and its representatives from the time of the loss including allowing full access to the M/T FAIRCHEM BOGEY for inspections, and producing all documents and records requested by the Defendant and permitting the Defendant to inspect all records.

40. The Defendant has no legitimate or arguable reason for refusing to honor Plaintiff's claim under the aforesaid Policy of Insurance and/or the Defendant's underwriter's statements and acts at the beginning of the Policy period and during the Policy renewal. The Defendant's conduct in refusing to pay Plaintiff's claim amounts to a clear breach of Defendant's duty to act in good faith and deal fairly with their assured.

41. As a result of this bad faith and prejudicial handling of Plaintiff's claim, and in order to redress the public injury inherent in such bad-faith claims handling procedures, Plaintiff should be awarded punitive damages and attorneys' fees.

### FIFTH CAUSE OF ACTION FOR VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

42. Plaintiff repeats each and every allegation contained in paragraphs 1 through 41 of this Complaint, as if fully set forth herein at length.

43. Plaintiff's unfair claims practices, as set forth hereinabove, constitute a violation of the Connecticut Unfair Trade Practices Act ("CUTPA").

44. As a result of this CUTPA violation, Defendant is liable to Plaintiff for punitive damages and attorneys' fees.

45. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

384706.1

A. With respect to the First, Second and Third Causes of Action, damages of $269,053.73 plus costs, the attorneys' fees incurred by Plaintiff for recovery under the Policy of Insurance and pre-judgement interest from the date of the termination of the piracy event; and

B. With respect to the Fourth Cause of Action, punitive damages and costs and attorneys' fees relating to this cause of action; and

C. With respect to the Fifth Cause of Action, punitive damages and attorney's fees under CUTPA; and

D. With respect to all causes of action, such other and further relief as this Court may deem just and proper.

Date:   Stratford, Connecticut
        April 30, 2012

>                           FREEHILL, HOGAN & MAHAR LLP
>                           Attorneys for Plaintiff
>                           ALLIED CHEMICAL CARRIERS LLC.
>
>                           By  *Manuel A. Molina*
>                           Manuel A. Molina (CT-22142)
>                           246 Margherita Lawn
>                           Stratford, CT 06615-7546
>                           203-921-1913
>                           molina@freehill.com
>
>                           LLORCA & HAHN LLP
>                           Attorneys for Plaintiff
>                           ALLIED CHEMICAL CARRIERS LLC
>                           Manuel R. Llorca, Esq. (CT-07921)
>                           309 Greenwood Drive
>                           Panama City Beach, FL 32407
>                           850-249-7117
>                           m.llorca@llorcahahn.com

9

384706.1